**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LYNORE HORN,** **Plaintiff** | ) | |
| **vs.** | ) | **C.A. No.: 04-434S** |
| **SOUTHERN UNION COMPANY and NEW ENGLAND GAS COMPANY,** **Defendants** | ) | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Now comes the Plaintiff, Lynore Horn ("Plaintiff"), and hereby objects to the Motion for Protective Order, filed by Defendants Southern Union Company and New England Gas Company. As grounds therefore, Plaintiff relies on the attached Memorandum of Law.

Wherefore, the Plaintiff respectfully requests that the Defendants' motion be denied.

Plaintiff,
Lynore Horn,
By her Attorneys,

Patricia E. Andrews, #4321
Carly Beauvais Iafrate, #6343
170 Westminster St., Suite 601
Providence, RI 02903
(401) 421-0966
(401) 351-4802 (fax)

**CERTIFICATION**

I hereby certify that on the 12th day of October 2005, I mailed a copy of the within to Neal J. McNamara, Esquire, Robert J. Crohan, Jr., Esquire, Holland & Knight LLP, One Financial Plaza, Suite 1800, Providence, RI 02903.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **LYNORE I. HORN,** <br> **Plaintiff,** <br><br> **v.** <br><br> **SOUTHERN UNION COMPANY AND NEW ENGLAND GAS COMPANY,** <br> **Defendants.** | **C.A. No. 04-434S** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

## I. Introduction.

This is a sexual harassment and discrimination action filed by Lynore I. Horn ("Horn"), an employee of Defendants Southern Union Company and New England Gas Copmany ("Defendants"). Horn has been employed by Defendants (and its predecessors) since approximately January 1989. Throughout most of the time during which she has been employed, she was subjected to severe and pervasive sexual harassment and disparate treatment based upon her sex by both co-workers and supervisors. The following examples merely scratch the surface.

- A male co-worker had a gun at work, held it up to Plaintiff's head and said something like "what a great shot this is." The other males present laughed.
- Male co-workers would physically shove Plaintiff. They would leave offensive things for her like a baby with a big penis in her car. At one point, a male co-worker handed her a box of tampons.
- Male co-workers made comments about her body and appearance, like "boy does she have a nice ass." They also made comments about other

women in her presence, like "my wife hasn't given it in so long," or "it's that time of the month so I won't be getting any." They used offensive words like "cunt."

- Supervisors forced Plaintiff to perform difficult jobs and constantly criticized her. For example, Ed Bolduc made comments like "I don't expect a woman to do this anyway." At times, Bolduc would refuse to talk to Plaintiff and only communicate with her through other men.
- There were magazines depicting nude females in the workplace as well as other documents with derogatory cartoons and jokes about women.
- At one point one of her jobs was to clean the male locker room. Bolduc would not allow her to put up a sign so that men would not come in while she was cleaning. For some time, men would come in and urinate, take showers, and be totally nude in her presence.
- Executives were having sex with females in the garage where Plaintiff worked. Plaintiff was told by a supervisor to basically allow this type of behavior. Eventually another watchman caught an executive and the watchman was fired. Plaintiff was yelled at for not warning the watchman about this conduct.
- When Plaintiff worked in the construction and maintenance department, men would urinate on the side of the street in plain view and make offensive comments. They would also leave "dirty" magazines in the trucks.

This treatment ultimately caused Plaintiff significant emotional distress which has prevented her from working at the gas company.

There are other similarly-situated women who were subjected to harassment and discrimination during the same time period as Plaintiff. At least two others have filed lawsuits, and are represented by this office.[1] Others, who are not represented by Plaintiff's counsel, have filed charges of discrimination or made complaints to the

[1] The two other plaintiffs represented by this office are Carol Petrarca (C.A. No. 04-310S) and Christine Stamp (R.I. Superior Court, C.A. No. 04-4592). After Plaintiff Stamp amended her complaint in 2004, Defendants attempted to remove that case to this Court. Plaintiff Stamp objected and was successful in having that action remanded to state court. Plaintiff respectfully submits that this Court has no jurisdiction to prohibit or limit deposition questioning in the context of the Stamp matter.

Defendants. Defendants have filed the instant motion for protective order seeking to limit Plaintiff's ability to question witnesses during depositions about similarly-situated females. This motion lacks merit and should be denied.

**II. Argument.**

If any party has been or will be prejudiced or oppressed by the discovery process in this case, it is the Plaintiff, not the Defendants. This is not the Defendants first attempt to limit Plaintiff's access to discoverable information. Despite the fact that Plaintiff served a perfectly reasonable set of Interrogatories and a Request for Production of Documents, Defendants objected to nearly all questions and requests. Plaintiff's counsel has been forced to spend a significant amount of time engaging in Rule 37 discussions and preparing motions to compel substantive responses. Defendants have alleged that responding to the discovery requests are too burdensome, yet, upon information and belief Defendants have interviewed approximately thirty-five persons in the context of this litigation and has not provided any of that information to the Plaintiff. Thus, conducting depositions will be Plaintiff's main source of discovery. Despite this, Defendants have filed this protective order. This is clearly not the purpose of Rule 26(c) and is designed not to protect the Defendants, but to unfairly restrict Plaintiff's ability to discover relevant and potentially admissible evidence.

Under the federal rules, a party may obtain discovery of any matter not privileged, which is relevant to the subject matter involved in the pending action. Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be considered relevant - - the information sought need only appear reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). The principle reason why questions

relating to similarly-situated females is essential to this case is because it is a harassment and discrimination case and Horn must prove, among other things, that the harassment was severe and pervasive, and the harassment was because of her sex. Evidence that relates to other women is relevant to proving these claims as follows.

First, it is well-established that evidence of discriminatory comments or treatment toward other women helps establish Horn's hostile work environment claim. See Dominguez-Curry v. Nevada Transportation Department, 2005 WL 2218908 (9th Cir. 2005);Wanchik v. Great Lakes Health Plan, Inc., 6 Fed. Appx. 252, 261 (6th Cir. 2001) ("The notion that the courts should deem probative the conduct of an employer towards an entire minority group-even when an individual, and not a group, brings the complaint - is not new to this realm."); Lara v. Helen of Troy Nevada Corp., 218 F.R.D. 504 (W.D. Tex. 2003) (noting that in "this type of lawsuit" protective order not warranted even when deposition questioning targeted witness' knowledge of the sexual activity of Defendants' employees); Knoppel v. Tech Data Corp., 225 F.R.D. 263, 265-66 (M.D. Fla. 2004); Jackson v. Entergy Operations Inc., 1998 WL 46822 (E.D. La. 1998); cf. Cook v. New York City Department of Educ., 90 Fed. Appx. 562, 563 (2nd Cir. 2004) (rejecting plaintiff's hostile work environment claim where there was no evidence that harasser treated other females in a discriminatory manner). This evidence is also probative of Defendants' state of mind and intent. See Domniguez-Curry, 2005 WL 2218908 (comments made to other women show animus against plaintiff's class which allows factfinder to conclude that animus played a role in challenged decision); Spulak v. Kmart Corp., 894 F.2d 1150, 1156 (10th Cir. 1990) (testimony of other employees relevant to establish defendants' intent); Hurley v. Atlantic City Police Dep't, 174 F.3d

95, 110-11 (3d Cir. 1999) (same). Evidence of a past history of harassment or discrimination toward other women also helps establish that the Defendants' knew or should have known of the harassment, but did nothing (or not enough) to stop it. See McCombs v. Meijer, 395 F.3d 346, 353-54 (6th Cir. 2005); Wanchik, 6 Fed. Appx. at 265; Turnbull v. Topeka State Hospital, 185 FRD 645, 650 (D. Kan. 1999). This type of evidence can be used to dismantle the employer's affirmative defense - - that it took ample preventative and corrective measures to ward against a hostile work environment. See McCombs, 395 F.3d at 353-54; see also Alexander v. Alcatel NA Cable Systems, 50 Fed. Appx. 594, 601-02 (4th Cir. 2002) (reversing district court's exclusion of evidence about harassment of other women and finding it "highly relevant in deciding whether the employer should have anticipated that the plaintiff too would become a victim"). Evidence about the treatment of other women is relevant to satisfy reasonable belief element of retaliation claim. See Fine v. Ryan Int'l Airlines, 305 F.3d 746, 755 (7th Cir. 2002) ("Because other women but not other men had experienced the same problems * * * that [plaintiff] had, it was more likely that both she and any other reasonable person would believe that * * * foot-dragging in scheduling her own training was illegal based on her sex."). Finally, it cannot be disputed that evidence of the treatment of other women is relevant for purposes of credibility.

Thus, Plaintiff's counsel did ask Ed Bolduc about other women and does intend to continue to ask witnesses about treatment of other women during depositions in this case.[2] This includes questions about the treatment of women that Plaintiff's counsel does

---

[2]A review of the entire deposition reveals that the questions asked by Plaintiff's counsel all fall within this realm of reasonable and relevant questioning.

not represent, and ones that this office does represent.[3] None of Defendants' arguments overcome the broad discovery rules and the specific necessity for this inquiry in this type of case.

Defendants argue that it will be confusing. This is hardly a good enough reason to prevent such inquiries. The facts are the facts. Plaintiff is seeking to find out what the facts are, according to the Defendants. Plaintiff cannot understand what is confusing, for example, about asking Ed Bolduc, Petrarca's supervisor, why Petrarca was fired during a Horn deposition. If another female was fired for a pretextual reason it supports, among other things, Horn's claim that the gas company environment was hostile toward women and that women were treated differently than men in many of the terms and conditions of employment. The fact that the same question may be relevant to Petrarca's case, and may need to be asked in both cases does not render it "confusing" or "oppressing." This information is highly relevant since both Petrarca and Horn were supervised by Bolduc, worked the same job for a period of time, and their tenures overlapped. Thus, any claim by Defendants that each case is "unique" is untrue.

Defendants also argue that they are unable to properly prepare witnesses because they do not know what the subject matter of the deposition will be. This contention is incredible. Defense counsel is experienced in this area of the law and is well aware of the importance of evidence relating to similarly-situated women. Plaintiff has made it clear that she considers this type of questioning relevant. Finally, Plaintiff is aware of no

---

[3]For example, during Ed Bolduc's deposition he was not asked only about Petrarca and Stamp, but the same questions were asked about other similarly-situated women that this office does not represent - - for the same purposes as listed above. See Bolduc Deposition pp. 33-39 (questions about female job performance versus male job performance).

rule that requires her to provide Defendants with a road map of intended questions. In all events, an attorney's plan for a deposition is protected by the work-product privilege. Finally, Plaintiff's counsel notes that often deposition questioning is not pre-planned because it depends on the witness's response to the questions.[4] Defendants' also contend preparing witnesses may be particularly difficult with a Rule 30(b)(6) deposition. Again, this makes no sense because to conduct a Rule 30(b)(6) deposition the plaintiff has to designate the "matters on which the party will testify." Fed. R. Civ. P. 30(b)(6).

Even more troublesome is how defense counsel proposes to determine what questions are proper and which ones are not. The parties will be forced to haggle over the intent behind each question (during which Defendants seek Plaintiff's counsel's mental impressions) and consult the Court whenever there is a dispute that cannot be resolved.

Here, defense counsel has acknowledged that "there's certain overlap that cannot be avoided * * *." Bolduc Deposition p. 4 Because nearly every question could be construed as having dual purposes - - relevant to discovery in both cases - - it will be impossible to prohibit Plaintiff's counsel from asking these questions without significantly restricting plaintiff's ability to conduct discovery in her own case. This is totally inconsistent with the spirit of the discovery rules and the burdens on Plaintiff in discrimination cases.

**III. Conclusion**

---

[4]For example, at one point in the Bolduc deposition it was Bolduc himself that brought up the facts in Petrarca and Stamp in response to a question about Horn. Bolduc Deposition p. 13-14 (Bolduc refers to women's locker room incident during which he barged in unannounced on Stamp and Petrarca - Horn was not present for this incident).

For the foregoing reasons, the Plaintiff respectfully requests the Court to deny Defendant's Motion for Protective Order.

Plaintiff, Lynore I. Horn,
By her Attorneys,

Patricia E. Andrews, #4321
Carly Beauvais Iafrate, #6343
170 Westminster Street, Suite 601
Providence, RI 02903
(401) 421-0966
(401) 351-4802 (fax)

**CERTIFICATION**

I hereby certify that a copy of the within document has been sent by first-class mail on the 12th day of October 2005, to:

Neal J. McNamara, Esq.
Robert Crohan, Esq.
Holland & Knight, LLP
One Financial Plaza, Suite 1800
Providence, RI 02903