UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LYNORE HORN, Plaintiff | : | |
| v. | : | C.A. No. 04-434-S |
| SOUTHERN UNION CO. & NEW ENGLAND GAS CO., Defendants. | : | |

**DEFENDANTS' OBJECTION TO MOTION FOR PROTECTIVE ORDER AND CROSS-MOTION TO COMPEL PRODUCTION OF SUBPOENAED DOCUMENTS**

Pursuant to Fed. R. Civ. P. 37 and 45(c)(2)(B), Defendants Southern Union Co. and New England Gas Co. object to the Motion for Protective Order filed by Plaintiff, and cross-move to compel the production of the subpoenaed documents. The subpoenas at issue were lawfully served, pursuant to Fed. R. Civ. P. 45(b), first upon Plaintiff's former counsel, Patricia Andrews, Esq., on or about April 27, 2006, and then upon Plaintiff, on or about May 2, 2006. Plaintiff filed a Motion for Protective Order. Therefore, Defendants object to the Motion for Protective Order, move to compel the production of the subpoenaed documents, and request that the Court issue an Order requiring production of the subpoenaed documents.

In support of this Objection and Cross-Motion, Defendants submit the accompanying Memorandum of Law.

Respectfully submitted,

DEFENDANTS SOUTHERN UNION CO. &
NEW ENGLAND GAS CO.

By their attorneys,

NIXON PEABODY LLP

Neal J. McNamara (#4249)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent, via first class mail, postage prepaid, a true and accurate copy of the within document to Lynore Horn, 88 Alger Avenue, East Greenwich, RI 02821 this 3d day of May, 2006.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LYNORE HORN, Plaintiff | : | |
| v. | : | C.A. No. 04-434-S |
| SOUTHERN UNION CO. & NEW ENGLAND GAS CO., Defendants. | : | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR OBJECTION TO MOTIONS TO QUASH SUBPOENA AND THEIR CROSS-MOTION TO COMPEL PRODUCTION OF SUBPOENAED DOCUMENTS**

In this employment discrimination suit, Defendants Southern Union Co. and New England Gas Co. ("Defendants") have subpoenaed three sets of documents in the possession of Plaintiff and/or Plaintiff's former counsel, Patricia Andrews, Esq. ("Andrews"). See Ex. A, Subpoena served on Lynore Horn, May 2, 2004 ("Horn Subpoena").[1] The documents sought are relevant to Plaintiff's allegations of sex discrimination and harassment during her employment with Defendants.

The three sets of subpoenaed documents consist primarily of written communications between Plaintiff and Andrews prior to or during Andrews' representation of Plaintiff. Plaintiff has filed Motions for Protective Order on the ground that the sought-after documents are protected from disclosure by the attorney-client privilege. As this Memorandum makes clear,

[1] Defendants initially served a subpoena upon Andrews on or about April 27, 2006, seeking a range of documents related to Plaintiff's disclosures to Dr. Marzilli. On May 1, 2006, Andrews informed Defendants' counsel that with respect to her representation of Plaintiff, Andrews had only retained her own handwritten notes, in shorthand, and documents related to her withdrawal as Plaintiff's counsel. Andrews stated that she turned over all other documents in this case to Plaintiff. Defendants then served Plaintiff with the instant subpoena. In this "second" subpoena, Defendants requested a narrower range of documents with regard to Schedule A, ¶ 1, i.e., only Plaintiff's notes to Andrews that Dr. Marzilli had viewed. See Ex. A, Horn Subpoena. Defendants' requests listed in Schedule A, ¶¶ 2-3, did not change between the "first" and "second" subpoenas.

however, Plaintiff has waived the attorney-client privilege with respect to the subpoenaed documents and Defendants are therefore entitled to them.

## I. Facts and Travel

A. Disclosures Made to Dr. Marzilli

The facts relevant to the instant Motion are as follows. Since September 2003 – prior to filing this action and prior to her retention of Andrews – Plaintiff has sought psychological treatment from Dr. Robert A. Marzilli in Johnston, Rhode Island. See Ex. B, Deposition of Robert A. Marzilli, April 21, 2006 ("Marzilli Dep."), at 5:14-19. When Plaintiff filed suit against Defendants alleging, in part, emotional distress and psychic injury, she placed her treatment with Dr. Marzilli in issue. Pursuant to several Requests for Production of Documents over the course of discovery, Plaintiff has authorized production of the contemporaneous handwritten notes recorded by Dr. Marzilli during Plaintiff's sessions.[2] Dr. Marzilli was also deposed in connection with this case on April 21, 2006.

1. *Notes Prepared by Plaintiff for Andrews and Reviewed by Dr. Marzilli*

From Dr. Marzilli's notes and deposition testimony, Defendants learned that Plaintiff disclosed to Dr. Marzilli otherwise confidential communications between herself and Andrews. In particular, on April 8, 2004 and again on April 19, 2004, Plaintiff disclosed to Dr. Marzilli written "notes" – a memorandum outlining her charges against the Defendants – that was later given to Andrews, her then newly-retained attorney. See Ex. B, Marzilli Dep. at 37:5–39:20. Dr. Marzilli's notes, as read by him during his deposition, state:

[2] Most recently, after hearing on April 27, 2006, Magistrate Judge Almond granted Defendants' Motion to Compel Production of Medical Records, specifically, Dr. Marzilli's notes from January 2006 to the present. Plaintiff had refused to authorize the release of the most recent records in the absence of a court order requiring her to do so. Dr. Marzilli's continued deposition, necessitated by plaintiff's refusal to consent to the release of the most recent records, is scheduled for May 10, 2006. Plaintiff's actions caused the truncated deposition, and thus will result in otherwise unnecessary expense of time and resources by defendants.

> A. Yes. Lynore brought in a rough draft of the note she made for her lawyer today. It was horrendously written, but the points she made were excellent. I started to correct it for her, but more work had to be done on it. I wanted to redo it for her lawyer, because this rough draft does not capture her intelligence at all. The lawyer who will take the case is Pat Andrews. ...
>
> A. I was unable to see Lynore last week. She did a good job of rewriting things for the lawyer.

See Ex. B, Marzilli Dep. at 37:7-14, 38:24-25; see also Ex. C, Deposition of Lynore Horn, Vol. III, April 20, 2006 ("3d Horn Dep."), at 238:24–239:25. It is undisputed that Plaintiff turned these same notes over to Andrews. See Ex. C, 3d Horn Dep. at 240:7-9.[3]

*2. Disclosure of Communications Relating to Andrews' Withdrawal*

Defendants also learned from Dr. Marzilli's notes and testimony that Plaintiff discussed with him otherwise privileged communications regarding Andrews' withdrawal as Plaintiff's attorney.[4] Over the course of October, November, and December 2005, Plaintiff repeatedly divulged to Dr. Marzilli the circumstances surrounding the deterioration of her relationship with Andrews. Dr. Marzilli's notes reflect that on several occasions, Plaintiff disclosed otherwise confidential attorney-client communications to him regarding disputes between Plaintiff and Andrews. For instance:

- On October 14, 2005, Dr. Marzilli noted that Plaintiff "is getting fed up with her own lawyer, because she gets angry with Lynore when Lynore tries to point out to her things she knows about the person who is being deposed, so that the lawyer can ask more

---

[3] Additionally, Dr. Marzilli's notes and testimony indicate that in March 2005, Plaintiff may have once again disclosed notes intended for Andrews to Dr. Marzilli. His notes, as read by him during his deposition, state: "I gave Lynore copies of her notes for her lawyer. She was pleased." See Ex. B., Marzilli Dep. at 76:9-10. While it is unclear whether Dr. Marzilli is referring to his own notes or notes composed by Plaintiff, to the extent he is referring to notes composed by Plaintiff, Defendants submit that they are entitled to these documents as well.

[4] Andrews and her associate Carly Iafrate moved to withdraw as counsel for Plaintiff on or about December 12, 2005. Andrews alleged that withdrawal was necessary because of an "irreparable breakdown in communications" and/or ethical obligations. After several hearings, in camera submissions by Andrews and Plaintiff, and a protracted effort to secure successor counsel for Plaintiff, Andrews' and Iafrate's motion to withdraw was granted on February 15, 2006. See Ex. D, Memorandum and Order of Magistrate Judge Almond, February 15, 2006.

appropriate questions. Lynore is becoming very disenchanted over it. She really believes that the lawyers have talked privately and already know what the offer is going to be." Dr. Marzilli explained his notes this way: "So she was really getting disenchanted with what was going on, and feeling as if she wasn't getting any help with that, in terms of getting any answers to it . . . . [f]rom her lawyer." See Ex. B, Marzilli Dep. at 85:20–86:16.

- On November 21, 2005, Dr. Marzilli noted that "Lynore is upset with her lawyer, because of some of the people she is calling in for the depositions. She is deposing some who have very little to offer for the $500 cost, and the lawyer is not deposing some who Lynore feels have a lot to offer. This is frustrating Lynore. Then I put, should she change lawyers, question mark." See Ex. B, Marzilli Dep. at 87:8-15.

- On December 1, 2005, Dr. Marzilli noted: "[T]he frustration on Lynore's part continues. … One of the deposed people is Alicia Goody, Esquire, who was in legal when the gun incident occurred. Lynore had to go and find the woman in Massachusetts. Did she depose her, yes, but not for Lynore. She deposed her for another client, one of the other two women. Lynore is furious about it. She has called the Rhode Island Bar Association. The woman there told Lynore to talk to her today, and if she doesn't listen to her, she should get another lawyer. She was upset because she felt, here I am finding this person that I feel has information regarding this gun incident, and instead of being deposed for me, under my case, she's deposing her under another woman's case. Kind of limiting what she can ask, and she was upset about that, and rightly so." See Ex. B, Marzilli Dep. at 87:16–88:15.[5]

- Finally, on December 29, 2005, Dr. Marzilli wrote: "Lynore and her lawyer continue to disagree, and Lynore decided she's had it with her. Ms. Andrews told Lynore she had to make up her mind, but if she decided to leave, "good luck getting another lawyer to handle it, ha-ha." When Lynore told her that in the future she would have a Boston lawyer call her with any questions, that it would no longer be Lynore asking her. When she heard that she dropped Lynore. Even though it was understood that if she won, Ms. Andrews would get 30 percent, otherwise she'd get nothing. She is billing Lynore for work done on an hourly basis. Lynore called several lawyers, all of whom said Andrews made a lot of mistakes, and it would take a while to bring the case to where it should be." See Ex. B, Marzilli Dep. at 88:20–89:10.

As these notes and testimony make clear, Plaintiff discussed at length with Dr. Marzilli the content of otherwise confidential communications with Andrews regarding the circumstances of Andrews' withdrawal over a period of several months.

[5] Notwithstanding Plaintiff's alleged statements to the contrary, Alicia Goody, Esq., was never deposed in this or the related Petrarca or Stamp cases.

B. Disclosure to R.I. Department of Labor and Training

During the course of discovery, Defendants also learned that an otherwise confidential communication had been disclosed, presumably by Plaintiff's then-counsel Andrews, to the R.I. Department of Labor and Training ("DLT"). On or about March 22, 2006, Defendants subpoenaed all records from DLT relating to any claims or proceedings involving Plaintiff. DLT's document production in response to the subpoena included a portion of a letter addressed to Plaintiff, from Andrews, that had been produced to DLT and remained in their file on Plaintiff. See Ex. E, Letter from Andrews to Plaintiff dated January 5, 2005. However, the body of the letter was missing from the materials DLT produced to Defendants.

Defendants' counsel then contacted DLT to inquire whether the body of the letter had been purposefully redacted or whether it was simply the result of a photocopying error. See Ex. F, Affidavit of Matthew J. Frankel ("Frankel Aff."), ¶ 2. An official at DLT, Rich Fitzgerald, informed Defendants' counsel (a) that DLT itself lacked a complete copy of the letter, i.e., that the portion of the letter that Defendants' had received was all that DLT possessed; (b) that he believed the letter had not been purposefully redacted by DLT and that the body of the letter had been cut off because the document had originally been improperly scanned by DLT in a "landscape" rather than "portrait" position; and (c) that based on DLT's belief that Plaintiff had produced the letter, DLT was entitled to a complete copy of the letter and would seek the same. See Ex. F, Frankel Aff., ¶ 3.

C. Defendants' Subpoenas

Based on these disclosures, Defendants subpoenaed three sets of documents relating to those matters for which the attorney-client privilege had been waived by Plaintiff. First, Defendants' subpoena sought all notes composed by Plaintiff, which were viewed by Dr.

Marzilli and were also given to Andrews (and/or Carly Iafrate, Andrews' associate). Second, Defendants' subpoena sought all communications regarding Andrews' (and Iafrate's) withdrawal, since Plaintiff waived any privilege with respect to those communications when she discussed them with Dr. Marzilli. Lastly, Defendants' subpoena sought the January 5, 2005 letter from Andrews to Plaintiff that had been produced to, but improperly scanned by, DLT. Defendants sent Plaintiff notice of the initial subpoena of the documents, which was directed toward Andrews. See footnote 1, supra. Plaintiff promptly objected to it on the ground of attorney-client privilege. Defendants therefore treat Plaintiff's objection to the initial subpoena directed to Andrews as stating objection to the instant subpoena directed to Plaintiff. Defendants now seek an Order compelling Plaintiff to produce the responsive documents on the ground that Plaintiff, by and through her voluntary actions, has waived attorney-client privilege with respect to those documents.

## II. Legal Argument

A party who invokes attorney-client privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived. In re Keeper of Records (XYZ Corp. v. United States), 348 F.3d 16, 22 (1st Cir. 2003); see also Rosati v. Kuzman, 660 A.2d 263, 265 (R.I. 1995). Federal and state courts have routinely construed the privilege narrowly because "it comes with substantial costs and stands as an obstacle of sorts to the search for truth." In re Keeper of Records, 348 F.3d at 22; see Haymes v. Smith, 73 F.R.D. 572, 576 (W.D.N.Y. 1976); State v. Von Bulow, 475 A.2d 995, 1006 (R.I. 1984). The privilege protects only communications that are made for the purpose of seeking or receiving legal advice, In re Keeper of Records, 348 F.3d at 22, and that are "expressly intended to be confidential." Von Bulow, 475 A.2d at 1005.

A client's disclosure of a confidential communication with her attorney "eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege." United States v. Aronoff, 466 F. Supp. 855, 862 (S.D.N.Y. 1979) (internal quotes and citations omitted). "When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." In re Keeper of Records, 348 F.3d at 22. "The privilege evaporates the moment that confidentiality ceases to exist." Id. at 23.

A. PLAINTIFF HAS WAIVED ALL CLAIMS OF PRIVILEGE WITH RESPECT TO NOTES GIVEN TO ANDREWS THAT WERE ALSO VIEWED BY DR. MARZILLI.

Defendants are entitled to the notes composed by Plaintiff, identified in Dr. Marzilli's notes and testimony covering the period of April 2004, because Plaintiff has no valid claim to confidentiality with regard to those notes. First, because Plaintiff showed the notes to Marzilli *before* ever transmitting them to her then-attorney, Andrews, no privilege ever attached in the first place. Second, even if the notes were intended to be a privileged communication between Plaintiff and Andrews, that privilege was waived by Plaintiff's voluntary act of showing the notes to a person outside of the confidential attorney-client relationship.[6]

1. PLAINTIFF'S NOTES WERE NONPRIVILEGED, PRE-EXISTING DOCUMENTS THAT DID NOT BECOME PRIVILEGED BY VIRTUE OF THEIR PASSAGE TO ANDREWS.

---

[6] Although some courts have held that communications with medical doctors or psychoanalysts can fall within the ambit of the attorney-client privilege, such cases uniformly involve situations in which the medical professional was retained at the behest of the attorney for the purpose of preparing his or her case. See generally Michael G. Walsh, Annotation, Applicability of Attorney-Client Privilege to Communications Made in Presence of or Solely to or by Third Person, 14 A.L.R.4th 594 (2005) ("Many courts have applied the attorney-client privilege to communications between a client and a psychotherapist *whose services have been obtained by the attorney to aid him in his trial preparation* . . ..") (emphasis added). Here, there is no dispute that Plaintiff began receiving treatment from Dr. Marzilli long before she retained Andrews.

It is well established that no privilege attaches to documents by reason of their passage from a client to an attorney where the documents existed prior to the formation of the attorney-client relationship. See 81 Am. Jur. 2d Witnesses § 390 (2004); see also United States v. Robinson, 121 F.3d 971, 975 (5th Cir. 1997) ("It goes without saying that documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer."). As the Eighth Circuit has noted, "[i]f an unprivileged document exists before there exists an attorney-client relationship the mere delivery of the document to an attorney does not create a privilege. . . . One of the essentials of a privileged communication is that it be confidential." United States v. Bartlett, 449 F.2d 700, 703 (8th Cir. 1971) (internal quotes and citations omitted). If a client may be compelled to produce documents in her possession, then the documents must be produced even if they have passed to into the possession of the attorney. In re Ruppert, 309 F.2d 97, 98 (6th Cir. 1962). Otherwise, a client could always evade her duty to produce documents by placing such documents with her attorney. Id.

Here, Plaintiff composed notes relating to her allegations against the Defendants, and first showed those notes to Dr. Marzilli. See Ex. B, Marzilli Dep. at 37:5–39:18; Ex. C, 3d Horn Dep. at 239:7–240:9. If Plaintiff had retained those notes all along, there is no question that they would now be discoverable. See In re Ruppert, 309 F.2d at 98. The notes were not privileged at the time they were created, which was prior to the consummation of the attorney-client relationship between Plaintiff and Andrews. As Dr. Marzilli noted, he was privy to a "rough draft" of Plaintiff's notes on April 8, 2004, when Andrews was not yet Plaintiff's lawyer. See Ex. B, Marzilli Dep. at 37:7-17 (noting that "[t]he lawyer who *will* take the case is Pat Andrews.") (emphasis added). He then reviewed an apparently more polished product on April 19, 2004. See Ex. B, Marzilli Dep. at 38:24-25. The mere fact that the notes were later

transmitted to Andrews does not cloak them with attorney-client privilege. See Robinson, 121 F.3d at 975. Thus, because the notes were unprivileged, not confidential, and in existence prior to the attorney-client relationship between Plaintiff and Andrews, they are discoverable and must be produced. See Bartlett, 449 F.2d at 703-04.

2. EVEN IF THE NOTES WERE INTENDED TO BE A PRIVILEGED CLIENT-ATTORNEY COMMUNICATION, PLAINTIFF'S VOLUNTARY ACT OF SHOWING THEM TO DR. MARZILLI DESTROYED CONFIDENTIALITY AND WAIVED THE PRIVILEGE.

As the First Circuit has noted, "[w]hen otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." In re Keeper of Records, 348 F.3d at 22. "The privilege evaporates the moment that confidentiality ceases to exist." Id. at 23. Thus, even if Plaintiff's notes were composed during the course of her representation by Andrews and would otherwise be a privileged communication, the mere fact that she disclosed the notes to a third party, Dr. Marzilli, "destroys" her claim to privilege.

3. ANY CLAIM THAT THE NOTES ARE PROTECTED BY WORK PRODUCT PRIVILEGE IS WITHOUT MERIT.

A) Plaintiff has waived her claim to work product privilege by failing to include the claim in her privilege log.

Failure to assert the privilege within a reasonable time, without a showing of good cause, constitutes a waiver of the privilege. Banks v. Office of the Senate Sergeant-At-Arms & Doorkeeper, 233 F.R.D. 1, 9 (D.D.C. 2005) (citing Blumenthal v. Drudge, 186 F.R.D. 236, 240 (D.D.C. 1999)). Numerous federal courts have found that where a party fails to assert a privilege on its privilege log or in any of its pleadings, the privilege is waived. See, e.g., Banks, 233 F.R.D. at 9 (citing Carey-Canada v. California Union Ins. Co., 118 F.R.D. 242, 248-49 (D.D.C. 1986)); Heavin v. Owens-Corning Fiberglass, 2004 U.S. Dist. LEXIS 2265 (D. Kan. 2004);

Bowne, Inc. v. AmBase Corp., 150 F.R.D. 465, 489-90 (S.D.N.Y. 1993); Carte Blanche PTE., Ltd. v. Diners Club Int'l, Inc., 130 F.R.D. 28, 32 (S.D.N.Y. 1990).

Specifically, Plaintiff's attempt to assert work product privilege at this late stage runs afoul of Local Rule Cv. 34(c), regarding objections to Requests for Productions of documents. Rule Cv. 34(c) reads:

> Each objection and the grounds therefor shall be stated separately. When an objection is made to any request, or sub-part thereof, it shall state with specificity all grounds upon which the objecting party relies. Any ground not stated in an objection shall be waived.

Plaintiff's notes are ostensibly identified in the privilege log Plaintiff produced in Response to Defendants First Request for Production of Documents.[7] See Ex. G, Plaintiff's Privilege Log. Since Plaintiff did not raise the work product privilege in her privilege log, and therefore did not object to production of the notes on that specific ground, she has waived her claim. See In re Honeywell Int'l, Inc. Sec. Litig., 230 F.R.D. 293, 299 (S.D.N.Y. 2003).

B) Plaintiff cannot invoke work product privilege because the document sought was central to her medical treatment, which is in issue in this case.

Under the Federal Rules of Civil Procedure and Rhode Island law, only the "impressions, conclusions, opinions, or legal theories" of an attorney enjoy absolute protection from discovery. See Fed. R. Civ. P. 26(b)(3); Fireman's Fund Ins. Co. v. McAlpine, 391 A.2d 84, 87 (R.I. 1978). The work product of a party, however, is discoverable when production would avoid injustice and undue hardship. See McAlpine, 391 A.2d at 87. By alleging emotional distress and psychic injury, Plaintiff has placed her emotional and mental state in issue in this case. This Court recently acknowledged the relevance and discoverability of Dr. Marzilli's records and notes

[7] If the notes authored by Plaintiff in the privilege log are not those that she showed to Dr. Marzilli, then Plaintiff has waived any claim to privilege by failing to list them in the privilege log at all. See, e.g., In re Grand Jury Subpoena,, 274 F.3d 563, 575-576 (1st Cir. 2001); Banks v. Office of the Senate Sergeant-At-Arms & Doorkeeper, 233 F.R.D. 1, 9 (D.D.C. 2005).

relating to treatment of Plaintiff. See footnote 2, supra. Plaintiff's voluntary decision to show the notes to Dr. Marzilli, even if they "prepared in anticipation of litigation" under Fed. R. Civ. P. 26(b)(3), made those notes part and parcel of Dr. Marzilli's treatment of Plaintiff. The notes were never confidential as between Plaintiff and Andrews, and they played a central role in Dr. Marzilli's treatment of Plaintiff, which is in issue in this case. There is no other means by which Defendants can discover the contents of these notes, which were of great interest to Dr. Marzilli. See Fed. R. Civ. P. 26(b)(3) (work product is discoverable when opposing party "is unable . . . to obtain the substantial equivalent of the materials by other means"). Therefore, Plaintiff's claims of attorney-client and work product privilege lack merit, and Defendants are entitled to production of the subpoenaed notes.

B. PLAINTIFF HAS WAIVED ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO COMMUNICATIONS REGARDING ANDREWS' WITHDRAWAL DISCLOSED TO DR. MARZILLI.

The rule that disclosure of confidential communications to a third party destroys attorney client privilege is equally applicable to communications between Plaintiff and Andrews regarding Andrews' withdrawal that were also disclosed to Dr. Marzilli. See In re Keeper of Records, 348 F.3d at 22. "[A] disclosure of, or even merely an assertion about, the [otherwise privileged] communication may effect a waiver of the privilege not only as to that communication, but also as to other communications made during the same consultation and communications made at other times about the same subject." Von Bulow, 475 A.2d at 1007 (quoting Aronoff, 466 F. Supp. at 862). As noted supra at 3-4, Plaintiff discussed, on numerous occasions, otherwise confidential communications with Andrews regarding the deterioration of their relationship, and, ultimately, its termination. Defendants are therefore entitled to all communications relating to the same subject matter.

Defendants' decision to seek these documents is grounded in their reasonable and well-supported suspicion that Andrews' withdrawal was a so-called "noisy withdrawal" in reaction to repeated instances of fraudulent conduct on the part of Plaintiff. See R.I. R. Prof'l Conduct 1.6 (commentary on "Withdrawal") ("If the lawyer's services will be used by the client in materially furthering a course of . . . fraudulent conduct, the lawyer must withdraw . . .."); see also R.I. R. Prof'l Conduct 3.3 (commentary on "Remedial Measures") ("If perjured testimony or false evidence has been offered [and confidential remonstration with the client fails] . . . . the advocate should seek to withdraw if that will remedy the situation."). "Misleading, inconsistent, or deceitful actions directed at the court itself" that falls short of civil or criminal fraud, but "directly interferes with the judicial process . . . can constitute a fraud on the court." Fellerman v. Bradley, 493 A.2d 1239, 1245 (N.J. 1985); see Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). "Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms." Aoude, 892 F.2d at 1118. Here, Defendants have reason to believe that Plaintiff has sought to mislead, conceal, and improperly influence testimony throughout the course of this litigation.[8]

1. PLAINTIFF HAS ATTEMPTED TO INFLUENCE THE TESTIMONY OF THE PLAINTIFFS IN THE RELATED CASES AGAINST DEFENDANTS.

First, Defendants possess strong evidence that Plaintiff has attempted to influence the testimony of the plaintiffs in the related Petrarca and Stamp cases. At the deposition of Carol Petrarca in connection with her suit against Defendants, Petrarca produced a handwritten document, authored by Plaintiff, that Petrarca had reviewed prior to her testimony. See Ex. H,

[8] Although the cited cases in this paragraph deal with the crime-fraud exception to the attorney-client privilege, Defendants do not allege that the exception is applicable here. Defendants make no allegation, and have no reason to believe, that Andrews or Iafrate engaged in any misconduct whatsoever. Defendants simply seek to determine whether their withdrawal was occasioned by instances of misconduct on the part of Plaintiff.

Handwritten Memorandum from Lynore Horn to Carol Petrarca ("Petrarca Memo"). In the top right corner of page one of the Petrarca Memo, Plaintiff wrote: "Please do not show to Pat – or take to dep. It would ruin a lot. Private" (all emphasis in original). Plaintiff also wrote: "things I hope you remember:" before listing some of her "signature" allegations:

- the "cream puff incident," see Ex. I, Deposition of Lynore Horn, Vol. I, September 19, 2005 (1st Horn Dep.), at 105:22–108:1.
- the "recycling buckets" incidents, see Ex. I, 1st Horn Dep. at 150:17–152:15.
- The "locker room" problem, see Ex. I, 1st Horn Dep. at 143:14–147:14.

Plaintiff then wrote: "*Please try to remember" before listing a number of other alleged incidents purportedly involving Plaintiff and/or Petrarca. Plaintiff's improper motives are further evidenced by what she wrote next:

> during deposition – you can ask to go to bathroom – woman do come in room. make sure if your Reading a Note – Go in stall. – Do not let people see you with notes. put notes – inside do not drop or let them fall out.

Plaintiff's improper conduct with respect to the Petrarca Memo was further underscored by Petrarca's testimony regarding it, which can only be described as false. Petrarca, apparently upon realizing the sensitivity of the document she had just produced, testified that *she* (Petrarca) had authored the document, despite Defense counsel's repeated attempts to point out the myriad ways that the document reflected Plaintiff's authorship. See Ex. J, Deposition of Carol Petrarca, April 19, 2006 ("Petrarca Dep."), at 108:5–114:9. The following day, at her third deposition session, Plaintiff testified without qualification that she had authored the document, but alleged that she did not remember when or why she wrote the document, or how it came into Petrarca's possession. See, Ex. C, 3d Horn Dep. at 254:12–255:2.

Petrarca's and Stamp's current counsel subsequently informed defense counsel that all three plaintiffs met, without their lawyer present, in the fall of 2005 after the first session of

Plaintiff's deposition, and that the Petrarca Memo resulted from that meeting. Petrarca's and Stamp's current counsel has also instructed both of her clients to refrain from speaking with Plaintiff regarding their respective cases. See Ex. K, Affidavit of Neal J. McNamara ("McNamara Aff."), ¶¶ X-Y. These facts, taken as a whole, are strong evidence of Plaintiff's improper efforts to influence the testimony of the litigants in the related cases against Defendants. Discovery of the communications relating to Andrews' withdrawal is the only way that Defendants can ascertain whether Plaintiff's fraudulent behavior toward the Court goes beyond what has already come to light. Cf. Von Bulow, 475 A.2d at 1011 (noting production of otherwise privileged material is proper where party seeking production shows that denial of production would result in injustice or undue hardship).

2. PLAINTIFF ATTEMPTED TO CONCEAL DR. MARZILLI'S NOTES AND DISCUSSED HIS TESTIMONY WITH HIM PRIOR TO HIS DEPOSITION.

Defendants also have reasonable and well-grounded suspicion that Andrews' withdrawal may have been the result of Plaintiff's fraudulent behavior vis-à-vis production of Dr. Marzilli's medical records and notes. Plaintiff attempted to conceal portions of the notes taken by Dr. Marzilli during her visits with him. Specifically, Plaintiff instructed Dr. Marzilli to record his notes of Plaintiff's sessions on a "two track" system – one abridged set of notes for production in this lawsuit, and one complete set of notes to be kept private. See Ex. B, Marzilli Dep. at 76:20–80:9 ("A. Yeah. This part over here, actually, *I had changed to not put in everything, because she didn't want me to do that anymore*") (emphasis added). It is also well-documented that Plaintiff had serious disagreements with Andrews regarding production of Dr. Marzilli's notes. See, Ex. B, Marzilli Dep. at 77:10–78:23 (noting that Andrews "yelled at" Plaintiff regarding Dr. Marzilli's notes).

Dr. Marzilli's notes also reflect that he and Plaintiff discussed his testimony prior to his deposition. Dr. Marzilli's entry for April 19, 2006 states: "My deposition is in 2 days. We went over some of the issues." See Ex. L, Notes of Dr. Marzilli, April 19, 2006.

Plaintiff's attempts to conceal Dr. Marzilli's unabridged notes, in light of her documented disputes with Andrews over the same, raise the distinct possibility that Andrews' withdrawal was premised upon Plaintiff's refusal to alter her course of conduct with respect to Dr. Marzilli. That Dr. Marzilli acquiesced to Plaintiff's demand for a "two track" record-keeping system, and recently discussed with Plaintiff "issues" prior to his deposition underscores the distinct possibility that Plaintiff has engaged in a course of conduct meant to mislead Defendants and this Court. Discovery of communications regarding Andrews withdrawal is the only method by which Defendants can ascertain the veracity and completeness of Dr. Marzilli-related evidence in this case.[9]

C. PLAINTIFF HAS WAIVED ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO THE LETTER FROM ANDREWS PRODUCED TO DLT.

Based on the representations of DLT discussed supra at 5, Defendants submit that they are entitled to production of the entire, unredacted letter constituting Exhibit E. Plaintiff's purposeful disclosure of the otherwise privileged letter to DLT unquestionably operated as a waiver of attorney-client privilege with respect to that letter. See, e.g., In re Lernout & Hauspie Sec. Litig., 222 F.R.D. 29, 34-35 (D. Mass. 2004); Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89, 97 (D. Mass. 2002). DLT's belief that it had mis-scanned the document has no bearing on this analysis; disclosure is disclosure.

---

[9] Defendants note that they do not allege that Dr. Marzilli is in any way complicit in Plaintiff's attempts to conceal and mislead. Dr. Marzilli was perfectly forthcoming regarding the "second track" of notes at his deposition, and was seemingly acting in good faith and at the behest of his patient, Plaintiff. Additionally, Dr. Marzilli denied authorship of a document that appears to be a forged note purportedly from him, which was contained in Plaintiff's file at DLT. See Ex. M, Marzilli/DLT Forgery; Ex. B, Marzilli Dep. at 91:21–93:12.

Even if Plaintiff did not produce the entire letter to DLT, Defendants are still entitled to its production. "[I]f a party-client introduces part of his correspondence with his attorney, the production of all the correspondence could be demanded." Int'l Tel. & Tel. Corp. v. United Tel. Co., 60 F.R.D. 177, 186 (M.D. Fla. 1973) (citing Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc., 32 F.2d 195, 201 (2d Cir. 1929)).

CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's motion for protective order and compel production of subpoenaed documents along with such other and further relief as the Court deems just and proper.

Respectfully submitted,
DEFENDANTS SOUTHERN UNION CO. &
NEW ENGLAND GAS CO.

By their attorneys,

NIXON PEABODY LLP

Neal J. McNamara (#4249)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent, via first class mail, postage prepaid, a true and accurate copy of the within document to Lynore Horn, 88 Alger Avenue, East Greenwich, RI 02821 this 3d day of May, 2006.