UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LYNORE I. HORN | : | |
| | : | |
| v. | : | C.A. No. 04-434S |
| | : | |
| SOUTHERN UNION COMPANY and | : | |
| NEW ENGLAND GAS COMPANY | : | |

## MEMORANDUM AND ORDER

Before the Court for determination are Plaintiff's Motions for Protective Order (Document Nos. 83 and 85) and Defendants' Cross-Motion to Compel Production of Subpoenaed Documents (Document No. 89). 28 U.S.C. § 636(b)(1)(A); LR Cv 72(a). A hearing was held on May 8, 2006. For the reasons discussed below, Plaintiff's Motions and Defendants' Cross-Motion are GRANTED in part and DENIED in part.

### Background

This is an employment discrimination action removed to this Court on October 8, 2004. Plaintiff was previously represented in this action by Attorneys Patricia Andrews and Carly Beauvais Iafrate. On December 12, 2005, Plaintiff's counsel moved to withdraw (Document No. 48) citing an "irreparable breakdown in communications" and representing to the Court that continued representation of Plaintiff was ethically precluded by a conflict of interest. Ultimately, on February 16, 2006, Plaintiff's counsel was permitted to withdraw, and Plaintiff entered her pro se appearance. (Document Nos. 60 and 61). Plaintiff remains pro se.

On or about April 28, 2006, Defendants' counsel served a document subpoena dated April 26, 2006 on Plaintiff's former attorneys. A similar but narrower document subpoena dated May 2,

2006 was served on Plaintiff by Defendants' counsel on or about May 2, 2006.[1] In response to these subpoenas, Plaintiff filed two nearly identical Motions for Protective Order on May 1 and 2, 2006 asserting that the documents sought by the subpoenas are privileged from disclosure by the attorney-client privilege. Defendants' Cross-Motion to Compel argues that the documents sought are either not privileged or, if so, Plaintiff waived any privilege through third-party disclosure. The documents sought by Defendants fall into three categories discussed separately below.

## Discussion

### A. Notes Submitted to Dr. Marzilli

Robert A. Marzilli, Ph.D. is Plaintiff's counselor and has been since 2003. Dep. of Marzilli, p. 3. Defendants' subpoena seeks notes which were composed by Plaintiff, viewed by Dr. Marzilli and later given to Attorney Andrews and/or Iafrate. On April 8, 2004, Plaintiff shared with Dr. Marzilli "a rough draft of the note she made for her lawyer today." Id., p. 37. Dr. Marzilli's April 8, 2004 notes indicate that "the lawyer who will take [Plaintiff's] case is Pat Andrews." Id. (emphasis added). Plaintiff testified at her deposition that she asked Dr. Marzilli to check the note for "spelling and grammar." Pl.'s Dep., pp. 238-240. He testified that he "started to correct [the note] for [Plaintiff], but more work had to be done on it." Id. He offered suggestions to Plaintiff that she "need[ed] to write [the note] so that it flows." Id., p. 37-38. On April 19, 2004, Plaintiff again met with Dr. Marzilli, and his notes indicate that Plaintiff "did a good job of rewriting things for the lawyer." Id., p. 38. Plaintiff showed the second version of the note to Dr. Marzilli "to see if they

---

[1] By letter dated May 9, 2006, Defendants' counsel indicated that both subpoenas remain in effect but that they withdraw any request for documents in the April 28, 2006 subpoena which go beyond the documents requested in the May 2, 2006 subpoena served on Plaintiff. Thus, this Court will decide these Motions as to both subpoenas based on the request made in Schedule A to the May 2, 2006 subpoena. See Def.s' Ex. A.

were better, and they were excellent." Id., p. 39. Dr. Marzilli did not keep a copy of either version of the note. Id., pp. 38-39. Plaintiff indicated at the hearing that the first version of the note no longer exists and that the second version was given to Attorney Andrews.

Plaintiff met with Dr. Marzilli on April 27, 2004 and May 3, 2004, and his notes indicated that Plaintiff "meets with her attorney this Friday," April 30, 2004, and "will be meeting with her lawyer again tomorrow," May 4, 2004. Id., pp. 39-40. On April 6, 2005, Plaintiff's former attorneys served a privilege log on Defendants which asserted the attorney-client privilege as to notes authored by Plaintiff to her attorneys made from "May 2004 - present." Defendants' Ex. G. At the hearing, Plaintiff indicated that she was not represented by counsel at the time the note(s) in issue were prepared and was "out looking for an attorney." Plaintiff did, however, testify at her deposition that she subsequently gave the second version of the note to Attorney Andrews. Pl.'s Dep., p. 240. Because it appears that Plaintiff's attorney-client relationship with Attorney Andrews began in late April/early May 2004, it is reasonable to conclude that at least the second version of the note prepared by Plaintiff, reviewed by Dr. Marzilli and later given to Attorney Andrews, is covered by the entry on Plaintiff's April 6, 2005 privilege log.

The attorney-client privilege protects confidential communications made by a client to their attorney. In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001). The privilege extends to those communications between client and attorney which are "confidential" and are "made for the purpose of seeking legal advice." United States v. Bollin, 264 F.3d 391, 412 (4th Cir. 2001). Further, "the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived." In re Keeper of the Records, 348 F.3d 16, 22 (1st Cir. 2003) (citations omitted).

Defendants contend that any privilege attached to these notes was waived by Plaintiff's voluntary disclosure of them to Dr. Marzilli. This Court agrees. The First Circuit has made clear that the disclosure of privileged communications to a third party acts as a waiver because it "destroys the confidentiality upon which the privilege is premised." In re Keeper of the Records, 348 F.3d at 22. Here, Plaintiff voluntarily disclosed the notes to Dr. Marzilli for his review and comment prior to the commencement of her attorney-client relationship with Attorney Andrews and prior to the commencement of this litigation. According to Plaintiff, she began seeing Dr. Marzilli in 2003, approximately one year prior to the end of her employment relationship with Defendants, and continues to see him. Plaintiff has put her mental condition and treatment in issue by making claims against Defendants for emotional distress and resulting damages. Thus, Plaintiff's treatment with Dr. Marzilli is within the scope of permissible discovery in this case. By sharing the initial and revised versions of the note with Dr. Marzilli in April 2004, Plaintiff has waived any attorney-client privilege that may have attached to those notes.[2]

**B. Communications Between Plaintiff and Her Former Attorneys Regarding the Circumstances of their Withdrawal from this Case**

During his deposition, Dr. Marzilli testified that, during the months of October through December 2005, Plaintiff revealed information to him regarding her disputes with Attorney Andrews. Defendants' counsel argues that these disclosures to Dr. Marzilli act as a waiver as to all written communications between Plaintiff and her former attorneys regarding the "circumstances of the[ir] withdrawal of representation." This Court disagrees.

---

[2] Plaintiff also asserts attorney work-product protection but offered no basis therefor in her Motions or at the hearing. In addition, Plaintiff's privilege log did not assert work-product protection as to notes prepared by Plaintiff and submitted to her former attorneys. Finally, even if Plaintiff had established work-product protection as to the note(s) in issue, this Court would similarly find a waiver by third-party disclosure.

While the First Circuit has recognized the possibility of such "subject matter waiver" of the attorney-client privilege, it has noted that "courts should be cautious about finding [such] implied waivers." In re Keeper of the Records, 348 F.3d at 23 (citing In re Grand Jury Proceedings, 219 F.3d 175, 186 (2nd Cir. 2000)). Further, the First Circuit has held that "[s]uch waivers are almost invariably premised on fairness concerns." Id. at 24. In other words, whether fairness requires a full subject matter waiver to prevent a party "from using the attorney-client privilege as both a sword and a shield." Id.[3]

Here, Plaintiff has not attempted to use her disclosures to Dr. Marzilli about her relationship with Attorney Andrews as a sword to gain some tactical advantage in this case. In fact, she has unsuccessfully objected to discovery regarding Dr. Marzilli. The disclosures were made in the context of Plaintiff's ongoing treating relationship with Dr. Marzilli and focused on Plaintiff's dissatisfaction and disagreements with her former attorney. Fairness concerns simply do not support a broad subject matter waiver as argued by Defendants. In fact, it would be patently unfair to imply a broad subject matter waiver based on statements made by Plaintiff to her counselor in the course of ongoing therapy. Defendants have had full discovery of Dr. Marzilli's records regarding Plaintiff and have deposed him. Plaintiff's disclosures to Dr. Marzilli do not justify a broad waiver of the privilege as to written communications between Plaintiff and her former attorneys not involving Dr. Marzilli and not disclosed to or discussed specifically with him.

---

[3] Defendants assert that their attempt to obtain the documents in issue is based upon a reasonable "suspicion" that Attorney Andrews' withdrawal was a "noisy withdrawal" in reaction to Plaintiff's "fraudulent conduct." Defendants' Mem. in Supp., p. 12. However, they argue only for a third-party disclosure waiver and do not attempt to invoke the crime/fraud privilege exception. Id., p. 12, n.9. Defendants' "suspicion" as to fraudulent conduct, even if it is well-founded, is not sufficient at this point to tilt the fairness balance in favor of a full subject matter waiver applying the third-party disclosure analysis.

**C. The January 5, 2005 Letter From Attorney Andrews to Plaintiff**

Defendants contend that any privilege as to this letter was waived by third-party disclosure. In particular, Defendants assert that the letter was submitted to the Rhode Island Department of Labor and Training ("DLT") in support of Plaintiff's claim for TDI benefits.

Defendants served a subpoena on the DLT and, in response, received only the top part of a letter to Plaintiff from Attorney Andrews dated January 5, 2005. Defendants' Ex. E. Other than "Dear Lynore," none of the text of the letter is contained in the document produced by the DLT. Defendants' counsel, Matthew Frankel, submitted an affidavit to the Court which indicates that a DLT official told him that the DLT lacked a complete copy of the letter and that the official "believed" that the body of the letter was cut off due to a scanning error. Attorney Frankel obviously has no personal knowledge as to what was submitted to DLT, who submitted it and whether there was a scanning error, and his recitation of what he was told by the DLT official is hearsay. Even if this Court were inclined to accept such hearsay, Attorney Frankel's Affidavit does not indicate that the DLT official he spoke with had any actual personal knowledge as to the condition of the letter actually submitted to DLT, who submitted it and why only the top portion is on file with the DLT.

Simply put, there is no competent evidence before the Court to make any determinations as to the letter in issue. There is no evidentiary basis upon which to make a finding that the letter is covered by the attorney-client privilege. More importantly, Defendants argue that any privilege was waived by third-party disclosure but provide no competent evidence upon which the Court could find that the contents of the letter were actually disclosed to the DLT, that such disclosure was voluntary and that the disclosure was made by Plaintiff or on her behalf.

**Conclusion**

For the foregoing reasons, Plaintiff's Motions for Protective Order (Document Nos. 83 and 85) and Defendants' Cross-Motion to Compel (Document No. 89) are GRANTED in part and DENIED in part as noted above. In particular, Plaintiff shall produce to Defendants' counsel, within fourteen (14) days of the date of this Order, the two notes she authored and shared with Dr. Marzilli in April 2004. If Plaintiff indicates within that time frame that she is not in possession of either or both such note(s), Plaintiff's former attorneys shall produce such note(s) within seven (7) days thereafter. Defendants' subpoenas dated April 26, 2006 and May 2, 2006 are otherwise quashed.

LINCOLN D. ALMOND
United States Magistrate Judge
May 11, 2006