# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LYNORE HORN, :
Plaintiff, :
:
v. : C.A. No. 04-434-S
:
SOUTHERN UNION CO. & :
NEW ENGLAND GAS CO., :
Defendants. :

**DEFENDANTS' MEMORANDUM IN REPLY TO**
**PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT**

Defendants Southern Union Co. and New England Gas Co. submit this memorandum in reply to Plaintiff's opposition to Defendants' motion for summary judgment in the above-captioned case. Defendants are entitled to summary judgment in this employment discrimination action because (a) the vast majority of Plaintiff's allegations are time-barred and (b) those that are not time-barred are insufficient to establish either disparate treatment or an actionable hostile work environment. Because of the unique travel of this case, Defendants will review the procedural posture and key facts before discussing the legal merits.

## I. Procedural Posture

Plaintiff worked at New England Gas Co. (or its predecessor, Providence Gas Co.) from 1989 until December 7, 2004. Plaintiff initially filed an administrative charge, pursuant to the Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1 et seq., at the Rhode Island Commission for Human Rights ("RICHR") on May 13, 2004. On June 4, 2004, Plaintiff filed a judicial complaint in Superior Court, alleging violations of the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1 et seq., and asserting a common law claim for intentional infliction of emotional distress. She later amended her complaint to include her FEPA claims after receiving a right-to-sue letter from the RICHR.

Following an extended period of discovery and the withdrawal of Plaintiff's counsel, Defendants filed a motion for summary judgment as to all of Plaintiff's claims on June 30, 2006 (Doc. No. 110). Pursuant to local rules, Defendants' motion for summary judgment was accompanied by a memorandum of law (Doc. No. 110) and a statement of undisputed facts (Doc. No. 111). Plaintiff filed her opposition to Defendants' motion for summary judgment on July 12, 2006 (Doc. Nos. 112 and 113).

Prior to filing for summary judgment, on June 26, 2006, Defendants filed motions to stay the proceeding and to certify a question to the Rhode Island Supreme Court (Doc. Nos. 101 and 102). Defendants sought a final resolution to the open question of the proper statute of limitations for employment discrimination claims asserted under RICRA. On July 14, 2006, this Court granted Defendants' motion to certify question and stayed the proceedings pending a response from the Rhode Island Supreme Court to the certified question (Doc. Nos. 114-16 and 118).

The parties briefed their arguments to the Supreme Court during the winter and spring of 2007, and oral argument was heard on April 9, 2007. Subsequently, on June 27, 2007, the Supreme Court issued its decision on the certified question. The court held that the one-year limitation period contained in FEPA applied to employment claims under RICRA, as well.

On June 29, 2007, Defendants filed a motion to lift the stay and to set a date for the filing of this brief (Doc. No. 124). This Court issued a new scheduling order on July 18, 2007. Defendants now file this brief to clarify the remaining legal issues in light of the Supreme Court's opinion and to reply to Plaintiff's opposition to Defendants' motion for summary judgment.

## II. Review of Key Undisputed Facts

Plaintiff worked in several different departments over the course of her approximately fifteen-year career at New England Gas Co. and its predecessor, Providence Gas. From 1989 to September 2002, Plaintiff spent the vast majority of her time working in the facilities maintenance department under supervisor Ed Bolduc, and briefly under supervisor Gary Sunday following Bolduc's retirement.[1] As an employee in facilities maintenance, Plaintiff worked in buildings on Dexter Street, and, after the fall of 2000, on Weybosset Street, performing maintenance and other custodial tasks. In September 2002, Plaintiff transferred to the meter reading department for a brief stint of approximately two weeks.

On or about September 15, 2002, Plaintiff transferred to the leak survey department, where she reported briefly each morning to the Dexter Street building prior to departing on her assigned survey routes. Plaintiff remained in that department until she went out on indefinite leave on December 7, 2004. In leak survey, Plaintiff had a different supervisor, Cliff Richer, and a completely different set of co-workers than she had had in facilities maintenance and/or meter reading. Plaintiff's duties in leak survey also required her to work "in the field" for the vast majority of each day, rather than at either of the buildings on Weybosset and Dexter Streets.

Plaintiff alleges that her Mr. Richer, and her co-worker, Merle Dean, used vulgar language and discussed crude and inappropriate topics. Plaintiff complains that Richer called her nicknames, but there is uncontroverted evidence that Richer did not know that Plaintiff found the nickname "One-Oar" offensive and stopped using it as soon as his superior, Mike McGuire, alerted him that Plaintiff had lodged a complaint. Plaintiff also asserts that Richer discriminated against her with respect to vehicle assignments and one three-week training assignment in the

---

[1] Plaintiff also spent a five-and-a-half month stint in 1999 training for a position in the customer service department.

construction and maintenance department ("C&M"). The decisions as to vehicle assignment and C&M training occurred in the fall of 2002. She also complained of unfavorable route assignments, but offers no evidence to support the conclusory allegation that those route assignments amounted to unlawful sex discrimination. Plaintiff began a leave of absence from the leak survey department on December 7, 2004, never returned to work, and was eventually formally terminated. Her termination is not at issue in this litigation.

## III. Effect of the Supreme Court's Response to the Certified Question

The Supreme Court's majority opinion that a one-year limitation is applicable to employment discrimination claims under RICRA is binding as a matter of state law. As noted above, Plaintiff first filed a FEPA charge alleging sex discrimination and harassment on May 13, 2004. Plaintiff's RICRA claims were not lodged until June 4, 2004. For the purpose of determining the statute of limitations cut-off that applies to this case, and in light of the fact that both FEPA and RICRA have an identical one-year limitations period, Defendants acknowledge that the earlier-filed charge controls.[2] Thus, all allegations pre-dating May 13, 2003, are presumptively time-barred absent application of an equitable exception, such as the continuing violation theory. See, e.g., Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 46 (1st Cir. 2005); Crowley v. L.L. Bean, Inc., 303 F.3d 387, 405 (1st Cir. 2002).

### A. Plaintiff's Disparate Treatment Claims

In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the United States Supreme Court affirmed the notion that a discrete discriminatory act "occur[s]" on the day it

---

[2] Defendants note that Plaintiff has lodged identical allegations in support of her causes of action under FEPA and RICRA.

"happen[s]." 536 U.S. at 110.[3] If a party does not file suit (or a proper administrative charge) within the limitations period following the act, that party "lose[s] the ability to recover for it." Id.

Although it is unclear what "adverse employment actions" Plaintiff is referring to in her disparate treatment counts, there can be no dispute that any disparate treatment allegation pre-dating the May 13, 2003 limitations cut-off is time-barred.[4] To the extent Plaintiff premises her disparate treatment claims on two alleged instances in which Plaintiff filed grievances because Bolduc denied her overtime shifts, those claims are time-barred as they undisputedly occurred before May 2001. The same applies to any disparate treatment claim for Gary Sunday's alleged failure to call Plaintiff in for overtime work in July 2002. See Morgan, 536 U.S. at 112 (quoting Bazemore v. Friday, 478 U.S. 385, 395 (1986)) ("[E]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII . . . ."); see also Kaplan v. City of Chicago, 2004 U.S. Dist. LEXIS 22339, at *21 (N.D. Ill. Nov. 2, 2004) (finding two denials of overtime constituted discrete acts); Shaw v. Potter, 2002 U.S. Dist. LEXIS 21057, at *10 (S.D. Ind. Oct. 24, 2002) ("Each denial of overtime constitutes a discrete discriminatory act . . . .").

Because the limitations cut-off is May 13, 2003, Plaintiff cannot recover for those acts even if she could prove that they were discriminatory – which, of course, she cannot. The same analysis applies to any other discrete, discriminatory adverse employment actions that Plaintiff

---

3 The Supreme Court recently reaffirmed this concept in Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2169 (2007) (citing Morgan, 536 U.S. at 110-11, 113, 114) ("The EEOC charging period is triggered when a discrete unlawful practice takes place.").

4 As noted, Plaintiff's termination occurred in 2005 (after Plaintiff was on a leave of absence for one year and failed to return to work) and is not at issue in the instant litigation. See Doc. No. 123, Memorandum & Order, May 4, 2007 (Almond, M.J.) (denying Plaintiff's motion to amend complaint to include ADA claim based upon Plaintiff's termination). Plaintiff is pursuing a claim related to her termination in another action in this Court, Horn v. Southern Union et al., C.A. No. 07-142S.

alleges occurred before May 13, 2003. Defendants are entitled to summary judgment on all such time-barred claims.

**B. Plaintiff's Hostile Work Environment Claims**[5]

The Supreme Court's response to the certified question forecloses Plaintiff's attempt to invoke the continuing violation theory to avert summary judgment on her hostile work environment claim for the period of her employment prior to her arrival in leak survey. Under Morgan, "if an act [falling within the statutory filing period] had no relation to the acts [comprising a hostile work environment outside the filing period], or for some other reason, such as certain intervening action by the employer, [it] was no longer part of the same hostile environment claim, then the employee can not recover for the previous acts." Costanzo v. United States Postal Serv., 2003 WL 1701998, at *11 (S.D.N.Y. March 31, 2003) (quoting Morgan, 536 U.S. at 118).

In determining whether harassment allegations which straddle the limitations cut-off date are part of the same actionable hostile environment claim, courts look to whether the complained-of incidents (1) involved the same type of employment actions; (2) occurred relatively frequently; and (3) were perpetrated by the same managers. See Randall v. Potter, 366 F. Supp. 2d 104, 116 (D. Me. 2005) (citing Morgan, 536 U.S. at 120). Courts have routinely rejected application of the continuing violation doctrine to span different working environments where, as here, a plaintiff changed worksites and managers prior to the limitations cut-off date. See Randall, 366 F. Supp. 2d at 117 (not part of same actionable hostile environment where

---

[5] Plaintiff does not dispute, and offers no authority challenging, the notion that this Court should analyze Plaintiff's hostile environment claim – specifically her claim of continuing violation – with reference to federal case law interpreting Title VII. See Croce v. State, 881 A.2d 75, 79-80 (R.I. 2005) (discussing several First Circuit cases in analysis of continuing violation theory under FEPA and RICRA); DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 21 (R.I. 2005); Center for Behavioral Health, Inc. v. Barros, 710 A.2d 680, 685 (R.I. 1998) (citing Newport Shipyard v. Rhode Island Commission for Human Rights, 484 A.2d 893, 897-98 (R.I. 1984)). Thus, Defendants' analysis of the viability of Plaintiff's claims relies primarily on federal cases.

plaintiff "work[ed] under different supervisors, [on] a different shift, and [with] a different crew"); Costanzo, 2003 WL 1701998, at *11 ("[W]hatever 'abuse' plaintiff received during her assignment . . . from December 1997 through March 1998, plaintiff's working circumstances clearly changed after her transfer to a new team with a new direct supervisor . . . in March 1998."); Little v. NBC, 210 F. Supp. 2d 330, 368 (S.D.N.Y. 2002) ("[Plaintiff's] allegations involve different co-workers and supervisors, in different time periods and on different shows. These differences preclude invocation of the continuing violation doctrine."); Hill v. Taconic Dev. Disabilities Svcs. Office, 181 F. Supp. 2d 303, 318 (S.D.N.Y. 2002) (holding that allegations of discrimination occurring while employee worked at one work site were not tied to discrimination that occurred two years later at another site, under different supervisors and with different co-workers); see also Garrison v. Burke, 165 F.3d 565, 570 (7th Cir. 1999) (quoting Koelsch v. Beltone Elecs. Corp., 46 F.3d 705, 707 (7th Cir. 1995)) ("[A]cts of sexual harassment so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations.").

Applying these well established principles, all of Plaintiff's claims pertaining to her time in facilities maintenance are time-barred. Plaintiff ceased virtually all contact with everyone with whom she worked in that department on or about September 1, 2002. Ed Bolduc, Plaintiff's alleged primary antagonist in facilities maintenance, retired long before that date, on June 30, 2001. After leaving facilities maintenance, Plaintiff reported to a completely different building[6] and spent almost all of her working hours on leak survey routes, i.e., in the field. There can be

---

[6] Plaintiff had been working in facilities maintenance at the Weybosset Street building since 2000. Once in leak survey, Plaintiff reported to the Dexter Street building each morning prior to departing for survey routes in the field.

no question that whatever alleged hostile environment existed in facilities maintenance, it ceased to exist upon her departure. Further, there are no facts connecting Plaintiff's experience in facilities maintenance to her experiences in the leak survey department within the limitations period. In order to have even a colorable claim of continuing violation encompassing her approximately twelve years in facilities maintenance, at the very least Plaintiff had to have filed a charge or complaint by September 1, 2003, i.e., within one year after leaving that department.[7] She did not. Therefore, her hostile environment claim is time-barred as to all allegations pertaining to Plaintiff's time in facilities maintenance.

The same is true of any allegations relating to Plaintiff's five-and-a-half months as a trainee in customer service during 1999. Plaintiff left that department long before the limitations cut-off date, and never worked under the same supervisor or with the same co-workers again. Plaintiff has advanced no facts that might connect her experience in customer service during 1999 with her work experiences within the limitations period. Therefore, her hostile environment claim is time-barred as to all allegations pertaining to Plaintiff's time in customer service, as well.

Lastly, any alleged hostile environment claim based on allegations relating to Plaintiff's two-week stint in meter reading during 2002 is also time-barred. Although Plaintiff does not seem to advance any allegations supporting a claim of hostile environment during this period, to the extent she is asserting such a claim, it is time-barred for the same reasons discussed above.

---

7 In fact, as noted in Defendants' initial memorandum in support of summary judgment, Plaintiff has not alleged an "act contributing to" the hostile environment she alleges existed in facilities maintenance anytime after May 31, 2001. See Defs.' Mem. in Support of Motion for Summary Judgment (Doc. No. 110), June 30, 2006, at 19-20. Thus, Plaintiff likely would have had to file a charge sometime in late May 2002 – well before September 1, 2003 – to preserve her facilities maintenance-related claims.

In sum, Plaintiff's hostile environment claim for the entire period of time up to her arrival in leak survey on September 15, 2002, is time-barred.

## III. Allegations Relating to Plaintiff's Experience in Leak Survey

Plaintiff's submission in opposition to summary judgment utterly fails to establish any triable issues in connection with her time in leak survey. In order to avoid summary judgment, Plaintiff is required to come forth with admissible evidence sufficient for a reasonable jury to find for her on at least one of her leak survey-related claims. Because Plaintiff has not put forth any such evidence, and certain discrete claims are, in any event, time-barred, Defendants are entitled to summary judgment.

### A. Plaintiff's "Statement of Disputed Facts" and appendix of purported "Issues" violate Local Rule 56(a) and are unsupported by specific citations to the record, and therefore the Court should adopt Defendants' Statement of Undisputed Facts.

A party that fails to observe this Court's Local Rules does so at its own peril. Ashley v. Paramount Hotel Group, Inc., 451 F. Supp. 2d 319, 323 (D.R.I. 2006) (citing Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)). "[A]ny fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion." Local Rule Cv 56(a)(3); see Laplante v. OneBeacon Ins. Group, 2006 U.S. Dist. LEXIS 76680, at *4 n.2 (D.R.I. Oct. 20, 2006). A "failure to present a statement of disputed facts, *embroidered with specific citations to the record*, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." Ruiz Rivera, 209 F.3d at 28 (emphasis added).

Although the Court may "accord Plaintiff some latitude given her pro se status," pro se litigants "are not excused from compliance with procedural rules or substantive law." Bartlett v. Am. Power Conversion Corp., 2006 U.S. Dist. LEXIS 72294, at *4 n.1 (D.R.I. Sept. 20, 2006)

(citing Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994)). "Proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment." Parkinson v. Goord, 116 F. Supp. 2d 390, 393 (W.D.N.Y. 2000).

Here, Plaintiff's submission is little more than a recitation "her own unsupported beliefs, opinion, and innuendo," Bartlett, 2006 U.S. Dist. LEXIS 72294, at *5, which do not specifically controvert any of Defendants' statements of fact or find support in the record. Courts in this District have repeatedly held that where submissions in opposition to summary judgment do not comply with Local Rule 56(a), the Defendants' Statement of Undisputed Facts should be adopted. See Laplante, 2006 U.S. Dist. LEXIS 76680, at *4 n.2; Bartlett, 2006 U.S. Dist. LEXIS 72294, at *5-6; Ashley, 451 F. Supp. 2d at 323; Carlow v. Mruk, 425 F. Supp. 2d 225, 232 (D.R.I. 2006), accepted by, 425 F. Supp. 2d 225, 2006 U.S. Dist. LEXIS 19563 (D.R.I., Mar. 28, 2006) (Smith, J.); see also Hutchins v. Cardiac Sci., Inc., 456 F. Supp. 2d 173, 176 n.2 (D. Mass. 2006); Hewes v. Magnusson, 350 F. Supp. 2d 222, 225 (D. Me. 2004). Plaintiff's offerings lack specificity across the board with respect to persons, places, and dates. Additionally, the vast majority of Plaintiff's written allegations lack coherency, and are not supported by citations to the record.

Thus, this Court has little choice but to adopt Defendants' Statement of Undisputed Facts in ruling on Defendants' Motion for Summary Judgment. As explained in detail in Defendants initial Memorandum in Support of Summary Judgment at 32-36, these undisputed facts entitle Defendants to summary judgment on that portion of Plaintiff's hostile environment claim that is not time-barred.

**B. Plaintiff's disparate treatment claims related to her time in leak survey are not viable as a matter of law.**

As noted in Defendants' initial Memorandum in Support of Summary Judgment at 25-32, Plaintiff's deposition testimony and filings can charitably be read to allege three discrete acts of disparate treatment by Defendants: (1) an unfavorable truck assignment leading to fewer overtime opportunities; (2) a temporary training assignment to the C&M department; and (3) unfavorable route assignments.

Defendants continue to rely on the arguments previously advanced in their initial Memorandum in Support of Summary Judgment as to why these claims are not viable as a matter of law, i.e., (a) that none of these allegations constituted "adverse employment actions" as matter of law; (b) that Plaintiff has no evidence that she was treated differently than her co-workers; and (c) that even if Plaintiff did receive unfavorable treatment, there is no evidence that it was because she is a female. Defendants, however, seek to supplement these arguments with reference to the Rhode Island Supreme Court's ruling on the certified question and an intervening decision of the U.S. Supreme Court, Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162 (2007).

Defendants submit that Plaintiff's claims of disparate treatment in (a) her truck assignment and (b) her C&M training assignment are both time-barred. As noted, the limitations cut-off date for Plaintiff's claims is May 13, 2003. Plaintiff began working in the leak survey department in mid-September 2002. Cliff Richer, Plaintiff's supervisor, assigned trucks to the each member of the group of new employees, which included Plaintiff, shortly after their arrival in leak survey. Likewise, Richer assigned Plaintiff to a three-week training period in C&M in December 2002. Thus, even if Plaintiff had evidence that these decisions amounted to sexually discriminatory adverse employment actions – which she does not – her claims would still be

time-barred, since both actions took place long before the limitations cut-off date of May 13, 2003.

Plaintiff also alleges that her allegedly discriminatory truck assignment resulted in de facto denial of overtime hours. As an initial matter, Plaintiff has offered absolutely no evidence that she was actually denied overtime opportunities that her co-workers received. This fact alone defeats any such overtime-based claim.

Additionally, Plaintiff's claim that her lack of overtime resulted directly from her truck assignment is expressly foreclosed by Ledbetter. In that case, the U.S. Supreme Court held that the plaintiff could not recover for pay disparities within the limitations period that had directly resulted from a discrete, discriminatory act that had occurred outside the limitations period. "[C]urrent effects alone cannot breathe life into prior, uncharged discrimination; . . . such effects in themselves have 'no present legal consequences.'" Ledbetter, 127 S. Ct. at 2169. Because Richer made the initial truck assignment decision outside of the limitations period, Plaintiff's challenge to the assignment is time-barred. She cannot "breathe life" into her "uncharged" challenge to the truck assignment simply by alleging (without evidence, of course) that it resulted in fewer overtime opportunities down the road and within the limitations period. See id. Defendants are therefore entitled to summary judgment on these claims on independent basis that they are time-barred under Ledbetter.

## IV. Conclusion

For the foregoing reasons, in addition to those advanced in their initial Memorandum in Support of Motion for Summary Judgment, Defendants respectfully request that this Court GRANT their motion for summary judgment as to all of Plaintiff's claims.

Respectfully submitted,

DEFENDANTS SOUTHERN UNION CO. and NEW ENGLAND GAS CO.,

By their Attorneys,

NIXON PEABODY LLP

/s/ Neal J. McNamara
Neal J. McNamara (#4249)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, Rhode Island 02903
(401) 454-1000
(401) 454-1030 (Facsimile)
nmcnamara@nixonpeabody.com
mfrankel@nixonpeabody.com

CERTIFICATION

The undersigned hereby certifies that a true copy of the within document was served via certified mail, return receipt requested, this 31st day of July, 2007 to:

Lynore Horn
88 Alger Avenue
East Greenwich, RI 02821

/s/ Neal J. McNamara